United States District Court
Southern District of Texas

**ENTERED**

September 08, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CURTIS LEE MARLOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-2417 |
| | § | |
| MCCLATCHY BROS., INC., d/b/a | § | |
| MCCLATCHY BROS. TRUCKING, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

### I.   Background

Curtis Lee Marlow was a truck driver for McClatchy Bros., Inc, d/b/a McClatchy Bros. Trucking.  McClatchy, which focused on the oilfield trucking business, was headquartered in Midland, Texas and had locations in Midland and Houston.  (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw, McClatchy's human-resources manager, at ¶ 3.)  McClatchy drivers operate distance routes between Midland and Houston as well as local routes in and around Houston.  (*Id.*)

Marlow unsuccessfully sought employment with McClatchy in 2012.  He reapplied and was hired in January 2014 on an at-will basis. (*Id*. at ¶ 4; Docket Entry No. 1 at 4).  Marlow and Gabriel Alcala both attended the McClatchy orientation session on January 13, 2014.  Alcala and Marlowe had worked together on a previous trucking job and Marlowe had taken Alcala and another driver to McClatchy to apply for employment.  Marlow concedes that during the orientation, McClatchy's Houston Terminal Operator, Ralph Seifert, told the newly hired truck drivers that timely deliveries were critically important to the company.  (*Id*. at 9).

Marlow alleges that the next day, when Alcala asked Seifert to clarify their employment

terms, Seifert said, "You'll be making more money than the Mexicans." (Docket Entry No. 1 at 10; Docket Entry No. 28 at 3-4.) Alcala resigned and filed an EEOC discrimination complaint based on Seifert's statement. (Docket Entry No. 1 at 10-11; Docket Entry No. 28 at 3-4.) Marlow asserts that, because of his association with Alcala, Seifert "announced to [other McClatchy] drivers that [Alcala] had filed an EEOC complaint" and that both Seifert and another Houston Terminal Operator, Clyde Johnson, retaliated against him by threatening to fire him and by reassigning him to local Houston routes rather than the distance route between Houston and Midland. (Docket Entry No. 1 at 10-11, 13; Docket Entry No. 28 at 1-3.) Marlow also alleges that he — and the other drivers — were not paid the promised amount because they were not paid for the time required to load the truck at the shipper. (Docket Entry No. 28 at 1.)

Marlow asserts a claim against McClatchy for retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*. McClatchy submitted summary judgment evidence that when Marlow drove McClatchy's distance route between Houston and Midland, he was repeatedly late on deliveries. (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 4; Docket Entry No. 1 at 11; Docket Entry No. 28 at 5.) Marlow alleges that he complained about the long hours required to make the deliveries on time, claiming that he was working 16 to 17 hours a day. (Docket Entry No. 28 at 2.) He alleges that he complained that, to make the deliveries on time, he had to drive more consecutive hours than the maximum allowed under the federal Department of Transportation regulations; that the extended hours made his diabetes worse; and that his truck would only pull the loads uphill at 10 miles an hour. In response, McClatchy "took [him] off the truck and put the truck in the mechanic shop for repair," and Clyde Johnson called and "told [him] that [he] had gotten [his] way and turned it around on [Johnson]." (*Id*. at 3; Docket Entry No. 1 at 11). Marlow alleges that

he also complained to human-resources manager Shaw that a coworker told him that the other Houston Terminal Operator, Seifert, was going to fire him, and that the indirect threat was retaliatory. Marlow alleges that after he complained to Shaw, she told him that two other McClatchy distance drivers had diabetes but were able to make timely deliveries without exceeding the DOT limits on consecutive driving hours or making their medical conditions worse. Marlowe speculated in his filings that these employees had "slower" work loads. (Docket Entry No. 28 at 3).

Marlow alleges that after he complained about the excessive hours needed to make timely deliveries on the distance routes he was assigned, McClatchy reassigned him to local Houston-area routes. Marlow claims that he found the local routes less desirable because the city traffic increased the stress. (Docket Entry No. 28 at 2). He does not dispute that the drivers on distance and local routes were paid the same. (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 6).

McClatchy asserts that, contrary to Marlow's statement, most drivers found the local routes better because they required drivers to spend fewer nights away from home and gave them more weekends. (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 6). There was no difference in pay between Marlow's distance and local routes. (*Id*. at ¶ 7).

Marlow asserts a second claim against McClatchy for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. Shortly after Marlow's reassignment to driving local routes, McClatchy changed its loading procedure to require drivers to use 4x4 load-stabilizing planks, which were heavier than the planks McClatchy previously required. (Docket Entry No. 1 at 12.; Docket Entry No. 28 at 8, 12). Marlow alleges that although the change applied to all drivers, the increased weight particularly affected him and other older drivers. Marlow alleges that McClatchy made the change to put pressure on older employees to resign. (Docket Entry No.

1 at 12; Docket Entry No. 28 at 8, 10).  On August 18, 2015, Marlow gave notice of his resignation, to be effective two weeks later.  (Docket Entry No. 1 at 12.; Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 8; Docket Entry No. 28 at 7-8).  McClatchy accepted the resignation and confirmed that it would pay Marlow until the end of the month.  (Decl. of Kay Shaw at ¶ 8).  Marlow asserts a third claim against McClatchy for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*.

On August 23, 2014 (five days after giving notice), Marlow was injured at work when a 4x4 load-stabilizing log fell and struck him.  (Docket Entry No. 1 at 12; Docket Entry No. 28 at 10).  On August 24, Marlow notified McClatchy that he would be unable to return to work before his effective resignation date.  (Docket Entry No. 1 at 12-13).  McClatchy paid him through the end of the month and his resignation became effective as scheduled, on September 1, 2014.

Marlow submitted an EEOC Charge of Discrimination on May 20, 2015.  He received the notice of his right to sue on May 28 and filed this suit on August 20, 2015, representing himself. When Marlow told the court that he was in the process of obtaining an attorney to represent him, the court extended both the discovery deadline and the deadline to file and respond to dispositive motions.  (Docket Entry Nos. 19, 20).  McClatchy filed its summary judgment motion, Marlow responded, McClatchy replied, and Marlow filed another response.  (Docket Entry Nos. 22, 28, 30, 35).  The motion for summary judgment is analyzed in detail below as to each of Marlow's claims.

## II.  Analysis

### A.  Retaliation under Title VII

#### 1.  The Legal Standard

When, as here, a plaintiff seeks to prove retaliation through circumstantial evidence, he has

the initial burden to make a *prima facie* showing that: (1) he was engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff makes the *prima facie* showing, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for the employment action. *Id.* If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.* "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013); *see also Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (applying a but-for causation standard to a § 1981 retaliation claim).

### 2.     The *Prima Facie* Case of Retaliation

Marlow claims that he was retaliated against after he complained to Kay Shaw after hearing a racist remark directed at his coworker, Alcala. The first issue is whether Marlow engaged in activity protected under Title VII.

Informing management of discrimination directed at coworkers can be protected under Title VII's opposition clause. *See E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239-40 (5th Cir. 2016); *Alack v. Beau Rivage Resorts, Inc.*, 286 F.Supp.2d 771, 774 (S.D. Miss. 2003) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)). "The prohibition of retaliation protects employees who use informal methods to voice their complaints, as well as those who file formal charges. Such informal means include 'making complaints to management . . . and

-5-

expressing support of co-workers who have filed formal charges.'" *Alack*, 286 F. Supp. 2d at 774 (quoting *Sumner*, 899 F.2d at 209).  The record shows that  Marlow's informal complaint about the remarks "sufficiently convey[ed] the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner."  *Id.* at 775 (quoting *Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 559-60 (D. Kan.1995)).  This complaint meets the *prima facie* burden for this element of the claim.

To the extent Marlow argues that he engaged in protected activity when Alcala filed an EEOC complaint, his argument fails to add another incident of protected activity, but that is not needed for the *prima facie* case.  Alcala engaged in protected activity when he filed his EEOC complaint, but a plaintiff cannot base a retaliation claim on a third person's protected activities. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226-27 (5th Cir. 1996).  Marlow does not allege or present evidence that he was involved in Alcala's decision to file or that he worked with Alcala on the discrimination complaint.  Instead, Marlow appears to assert that he was tarred by, and retaliated against for, his association with Alcala.  This is insufficient.

Marlow also argues that he engaged in protected activity by filing a worker's compensation claim after his August 23, 2014 injury.  But this cannot add to his protected activities for the retaliation claim because it occurred after he decided to resign and gave notice of his resignation. (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 8).  Although Marlow's resignation did not take effect until 13 days later, Marlow does not identify an adverse employment action that occurred between the submission of the worker's compensation claim and the effective date of his resignation, or allege that he sought reemployment later and McClatchy refused.  Nor does Marlow allege or identify  any  evidence  tending  to  show  that  McClatchy's  decision  to  dispute  his  worker's

compensation claim was carried out for impermissible retaliatory purposes.

Marlow also refers obliquely to his attempt to secure unemployment benefits, which McClatchy disputed. (Docket Entry No. 35 at 7). To the extent that Marlow intended this reference to serve as an additional alleged ground for retaliation, it fails for the same reason. Marlow's complaint does not allege, and he has not cited record evidence showing, that McClatchy's decision to dispute his unemployment benefit claim was carried out for impermissible purposes as opposed to his resignation. Although Marlow refers to McClatchy's failure to pay him and all other drivers a detention fee for the time spent at the shipper having the trucks loaded, this action applied across the board and did not target McClatchy; it fails to meet the requirements for a retaliation claim.

Marlow engaged in protected activity when he complained to Kay Shaw about the comment directed at Alcala. He claims that McClatchy reassigned him to local routes in retaliation for his complaint. An action is adverse if "[it might have] dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Marlow argues that his reassignment to local routes was an adverse employment action because he found city traffic stressful. (Docket Entry No. 28 at 2-3). McClatchy responds that most drivers preferred the local routes, which allowed drivers to spend fewer nights away from their families and gave them more weekends off. McClatchy appears to argue that it was objectively unreasonable for Marlow to prefer long-distance routes. (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 6).

Reassigned job duties can be materially adverse even if the employee's present and former duties "fall within the same job description," *Burlington*, 548 U.S. at 70, if the impact on the employee, reasonably viewed, would dissuade that employee from engaging in protected activity.

*Id*. at 69.  "A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."  *Id*.  An employment action might be materially adverse if it required the employee to "spend more time performing the more arduous duties and less time performing those that are easier and more agreeable."  *Id*. at 70-71.

The record evidence supporting Marlow's position is thin.  It does not appear objectively reasonable to prefer long-haul driving on the basis that it avoids city traffic; a long-distance driver with deliveries in and out of Houston has *both* city traffic and the disruption of  time away from home to contend with.  It appears objectively reasonable to prefer local routes because they only involve city traffic and allow greater opportunities to stay at home and to have weekends off.  Marlow's complaints about the hours on the road and the difficulties of managing his diabetes appear to weaken further the reasonableness of his argument that a long-distance truck route was better for him.  Even if, however, a reasonable employee could objectively find the reassignment so much less desirable that it could tend to dissuade that employee from opposing workplace discrimination, meeting the adverse-employment-action requirement, Marlow cannot meet the third element of the retaliation claim.

Marlow contends that McClatchy reassigned him to local Houston-area routes in retaliation for his opposition to the discriminatory remark directed to his coworker, Gabriel Alcala.  (Docket Entry No. 1 at 13; Docket Entry No. 28 at 4).  He claims that he would not have been reassigned but-for the retaliation.  The record evidence undermines his claim.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . .  This requires proof that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). The *prima facie* showing is not satisfied by evidence showing that retaliation was a motivating factor in an employee's duty reassignment. *Id.* at 2532-2533. Title VII's antiretaliation provision requires evidence that the alleged retaliatory act would not have occurred but for the retaliation. *Id.* When, as here, the evidence shows performance issues or problems as the primary, or at least a significant, reason for the reassignment, the plaintiff cannot show that the reassignment would not have occurred absent the retaliation.

McClatchy has presented extensive evidence, much of it undisputed, that it took Marlow off the long-distance routes because he was repeatedly late in his deliveries, he complained that he could not make on-time deliveries without exceeding the allowable number of consecutive driving hours, and he complained that the long-distance routes made his diabetes difficult to manage. (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 6). Marlow has not presented or identified record evidence to support a *prima facie* showing that given these performance issues, retaliation was the but-for cause of the reassignment. Summary judgment is appropriate on this ground alone.

### 3.    Nondiscriminatory Justification and Pretext

Even if Marlow had made a *prima facie* showing of retaliation, McClatchy proffered legitimate nondiscriminatory reasons—the performance issues in making timely deliveries within the Department of Transportation limits on driving hours—for reassigning Marlow to local routes. Marlow has not met his burden of raising a factual dispute material to finding pretext. Marlow admits that he was late on his routes and that he could not make timely deliveries within the allotted hours. He claims that this was due to McClatchy refusing to preload the cargo at the shippers and using paper rather than electronic drivers' logs. No evidence supports this claim. It is inconsistent

with, and undermined by, the record evidence that other drivers, including two with diabetes, were able to make timely long-haul deliveries without exceeding the federally mandated hours.  (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶¶ 4-6); *see Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000).  Marlow has not controverted this evidence or shown that other drivers had difficulty making timely deliveries despite being subject to the same policies.  Marlow has not raised a factual dispute material to showing pretext.  *See Corley v. Jackson Police Dept.*, 566 F.2d 994, 1003 n.14 (1978).

Summary judgment is granted on the retaliation claim.

### B.     The Disability and Age Discrimination Claims

Marlow asserts claims under both the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*  He alleges that the reassignment to the Houston-area local routes was motivated by animus because of his age and because of his diabetes.

To make a *prima facie* showing of discrimination, whether for age or disability, Marlow must show that he: (1) was a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside his protected class, or that similarly situated persons were treated more favorably than he was.  *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (applying framework to ADEA claims); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009) (applying framework to ADA claims).  A plaintiff who makes a *prima facie* showing of discrimination shifts the burden to the employer to proffer a legitimate, nondiscriminatory reason for the allegedly adverse employment action.  *Rachid*, 376 F.3d at 312; *Chevron*, 570 F.3d at 615.  That proffer shifts the burden back to

the plaintiff to raise a fact issue as to pretext.

### 1.   Age Discrimination

McClatchy does not dispute that Marlow was a member of a protected class or that he was qualified for his position.  McClatchy does dispute that Marlow has shown an adverse employment action or that McClatchy treated similarly situated persons outside the protected class, or younger than Marlow, more favorably.

Outside the antiretaliation context, an adverse employment action includes only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).  An employment action that "does not affect the employee's job duties, compensation, or benefits, does not qualify as an adverse employment action."  *Davis v. Miss. Transp. Comm'n*, 618 F. Supp. 2d 559, 564 (S.D. Miss. 2009).

In the discrimination context, Marlow's reassignment is not an adverse employment action. He was not paid less.  His duties remained the same.  Although the local routes may have had more time in city traffic, Marlow could avoid the extended hours of long-distance routes and could spend more nights and weekends at home and off work.  (Docket Entry No. 22, Ex. A, Decl. of Kay Shaw at ¶ 6).  And Marlow does not point to evidence showing that similarly situated younger individuals with nearly identical performance problems were not reassigned or were otherwise treated more favorably.  Marlow describes another driver, referred to only as "JW," who received company bonuses despite an imperfect driving record, but there is no evidence that JW had performance problems similar to Marlow's.   Although two employees might share the same title and responsibilities, employees with "dissimilar violations" of company policies are not "similarly situated."  *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009).

Marlow also alleges that McClatchy changed the required plank size to a heavier plank, in order to pressure older drivers to leave.  This allegation is undermined by the absence of evidence that this across-the-board requirement in fact adversely or disproportionally affected older drivers or that these drivers were unable to continue their jobs.

Summary judgment is granted on the age-discrimination claim.

### 2.    Disability Discrimination

Marlow's reassignment does not qualify as an adverse employment action for the purpose of the disability-discrimination claim, for the reasons discussed above in the context of the age-discrimination claim.  Additional reasons support granting summary judgment on this claim.

The ADA requires an impairment that substantially limits a major life activity.  *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 605 (S.D. Tex. 2012) (citing 42 U.S.C. § 12102(1)).  Courts recognize working as one of the "major life activities," but a "substantial limit" on this activity  requires a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a particular job is not a substantial limitation in the major life activity of working. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995).  Marlow has not identified evidence of the severity of his diabetes, or that it was so severe as to limit his ability to drive his truck.  Nor has he alleged or identified evidence showing that other, similarly situated drivers with nearly identical performance issues but without diabetes were allowed to continue to drive long-haul routes.  To the contrary, he fails to controvert the evidence that two drivers with diabetes were able to make on-time long-distance deliveries.  For these reasons, as well as the absence of an adverse-action showing, summary judgment is granted on the disability-

discrimination claim.

## III.   Conclusion

McClatchy is entitled to summary judgment on all Marlow's claims.  Final judgment is entered by separate order.  In light of Marlow's self-representation, each party will bear its own costs and fees.

SIGNED on September 8, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge